UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

L. T. TUCKER #132271,                            Case No.  2:19-cv-00235

        Plaintiff,                            Hon. Hala Y. Jarbou
                                        U.S. District Judge

   v.

SKYTTA, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This is a civil rights action brought by state prisoner L.T. Tucker pursuant to 42 U.S.C. § 1983.  Tucker alleges that the Defendants in this case retaliated against him by issuing false misconduct tickets, interfered with his medical treatment, discriminated against him based on his race.  Defendants in this case are Acting Sergeant Skytta, Acting Sergeant Larson, Grievance Coordinator LaPlante, and Lieutenant Wickstrom.

Defendants have filed a motion for partial summary judgment.  That motion is now thoroughly briefed.  (*See* ECF Nos. 22 (motion), 23 (supporting brief), 58 (Tucker's response), 63 (Defendants' reply), 65 (Tucker's sur-reply) and 67 (Defendants' response to sur-reply / request to strike sur-reply).[1])

_____

[1]      "It is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a

Defendants concede that Tucker exhausted three of his claims:  Claims 2, 4 and 5, which are shown in the chart below.  (ECF No. 23, PageID.177-78.)  They argue that Tucker has not exhausted his other claims.

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
| 1 | Retaliatory false misconduct ticket, in violation of the First Amendment | Skytta | November 1, 2017 |
| 2 | Interference with medical treatment, in violation of the Eighth Amendment | Skytta | November 1, 2017 |
| 3 | Conspiracy in support of the retaliatory misconduct ticket, in violation of the First Amendment | Larson | November 1, 2017 |
| 4 | Excessive force by tightening handcuffs, in violation of the Eighth Amendment | Larson | November 6, 2017 |
| 5 | Defendant issued false misconduct tickets in | LaPlante | November 7, 2017[2] and prior to this |

surreply."  *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted).  The Court may grant leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply.  *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010).  Tucker is an experienced litigator in this Court.  A query on the Court's electronic court filing system, or ECF, indicates that he has been the plaintiff in approximately 45 lawsuits in this Court.  In addition, Tucker is subject to the three strikes rule based on his prior cases.  *See Tucker v. Corizon Corr. Health Care*, No. 18-1725, 2019 WL 2713289, at *2 (6th Cir. Apr. 22, 2019), cert. dismissed, 140 S. Ct. 336, 205 L. Ed. 2d 11 (2019) (stating that "[t]he district court did not abuse its discretion by dismissing Tucker's complaint without prejudice under the 'three strikes' provision of § 1915(g)").  In this case, Tucker did not seek leave to file a sur-reply.  Accordingly, his sur-reply is stricken.

[2]     Tucker alleges that LaPlante issued a retaliatory false misconduct ticket on November 29, 2017.  (ECF No. 1, PageID.22.)  The record does not contain a misconduct ticket issued by Defendant LaPlante on November 29, 2017.  Defendant

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|---|
|  | retaliation against Plaintiff and due to Plaintiff's race, in violation of the First and Fourteenth Amendments |  | date, and December 7-8, 2017 |
| 6 | Defendant retaliated against Plaintiff and discriminated against him based on his race by conducting sham hearing, in violation of the First and Fourteenth Amendments | Wickstrom | November 29, December 7, 2017 |
| 7 | Race discrimination during misconduct hearing, in violation of the Fourteenth Amendment | Wickstrom | December 7, 2017 |
| 8 | Violated state laws and prison policy by using derogatory, humiliating, or degrading language | Wickstrom | December 7, 2017 |

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant the motion and dismiss claims 1, 3, 6, 7 and 8.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to

---

LaPlante did issue Tucker a misconduct ticket on November 7, 2017, for interference with the administration of rules.  Defendant LaPlante assumes that Tucker meant the November 7, 2017, misconduct ticket.  It appears that Tucker agrees.  (ECF No. 58, PageID.941.)

judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."

---

[3]     Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process

5

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits

6

the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.   The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.   Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).   Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ T, BB.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ T, FF.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.* at ¶¶ T, FF.  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved."  *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.  *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.  The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.  *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance

procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[4], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94.  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

---

[4]     Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

rules will not bar that prisoner's subsequent federal lawsuit.   *Reed-Bey v.*
*Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and
> therefore does not exhaust his administrative remedies under the
> PLRA—when he does not specify the names of each person from whom
> he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th
> Cir. 2010) ("Requiring inmates to exhaust prison remedies in the
> manner the State provides—by, say, identifying *all* relevant
> defendants—not only furthers [the PLRA's] objectives, but it also
> prevents inmates from undermining these goals by intentionally
> defaulting their claims at each step of the grievance process, prompting
> unnecessary and wasteful federal litigation process.").  An exception to
> this rule is that prison officials waive any procedural irregularities in a
> grievance when they nonetheless address the grievance on the merits.
> *See id*. at 325.  We have also explained that the purpose of the PLRA's
> exhaustion requirement "is to allow prison officials 'a fair opportunity'
> to address grievances on the merits to correct prison errors that can and
> should be corrected to create an administrative record for those disputes
> that eventually end up in court."  *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

## IV.  Grievances Identified by Defendants

In their motion for summary judgment, Defendants attached copies of 73
grievances[6] that Tucker filed with the MDOC since January of 2013.  Defendants
identified five grievances that they claim are relevant to the subject matter of the

---

[5]     In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim
"where he notifies the relevant prison . . . staff" regarding the specific factual claim
"giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596.
For example, grieving a doctor about his failure to give cardiac catheterization failed
to grieve the claim that the doctor erred by not prescribing Ranexa.

[6]     Attaching every grievance to this brief was unnecessary and has made finding
the relevant grievances more complicated.  If Defendants must attach every grievance
that a plaintiff filed as an exhibit, whether relevant or not to the complaint, counsel
should separate the relevant grievances relied upon in the brief from those that have
nothing to do with Defendants' argument.  Even Tucker concedes that most of the
exhibits attached to Defendants' brief are not relevant.  (ECF No. 58, PageID.938.)

complaint.    They  claim  that  a  review  of  these  grievances  will  demonstrate  that

Tucker  has  failed  to  exhaust  his  administrative  remedies  on  some  of  his  claims.

These grievances are summarized below.

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step I | Results at Step II | Results at Step III |
|---|---|---|---|---|---|---|
| AMF-17-11-2651-26A (ECF No. 23-8, PageID.529-532.) | Larson | Assault | November 6, 2017 | Denied | Denied | Denied |
| AMF-17-11-2754-11G (ECF No. 23-8, PageID.525-528.) | LaPlante | Retaliation by not processing grievances | November 14-15, 2017 | Denied | Denied | Denied |
| AMF-17-12-2911-28A (ECF No. 23-8, PageID.507-510.) | LaPlante | Denied grievance forms | December 7, 2017 | Rejected as duplicative to AMF-17-11-2754-11G, which was denied on the merits | Rejected | Rejected |
| AMF-17-12-2912-27A (ECF No. 23-8, PageID.503-506.) | LaPlante | Retaliation and discrimination by issuing false misconduct ticket | December 7-8, 2017 | Noted that misconduct appeal is being processed and not grievable | Rejected | Rejected |
| AMF-17-11-2623-17F (ECF No. 23-9, PageID.580-583.) | Skytta | Interfered with medical treatment | November 1, 2017 | Denied | Denied | Denied |

## V.  Misconduct Appeals

Tucker's Misconduct Reports and Appeals are summarized below.

| Person(s) Named | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| Skytta and Larson (ECF No. 63-3, PageID.1096 -1111.) | Threatening behavior and Larson conspired to support false misconduct ticket. | November 1, 2017 | November 13, 2017. Did not raise retaliation claim. | Denied the charges but was found guilty. | Request for rehearing denied after raising issue of retaliation. |
| LaPlante (ECF No. 63-4, PageID.1112 -1114.) | Interference with administration of rules. | November 7, 2017 | December 7, 2017. Did not raise retaliation claim. | Challenged the investigation but found guilty. | Denied |

## VI. Analysis

### A.  Claims Defendants concede were exhausted

Defendant Larson concedes that Tucker exhausted his claim of assault against

him in **grievance AMF-17-11-2651-26A**.  (ECF No. 23, PageID.176.)  This claim is

Claim 4 in the summary chart in Section I.

Defendant LaPlante concedes that Tucker exhausted his claims of retaliation

and racial discrimination against Defendant LaPlante arising on December 7-8,

2017.[7]  (*Id.*, PageID.177-178.)  This claim is Claim 5.

---

[7]      Exactly what Tucker is claiming is not clear.  It appears that Defendant LaPlante investigated the misconduct ticket and Tucker requested a statement from LaPlante during his misconduct hearing.  The Misconduct Summary Report attached at ECF No. 63-2, PageID.1088-1095 does not include a misconduct ticket issued on December 7-8, 2017.  Since Defendants have claimed that this issue was grieved by Tucker in **grievance AMF-17-12-2912-27A**, it is presumed that the retaliation and

Defendant Skytta concedes that in **grievance AMF-17-11-2623-17F,** Tucker exhausted his claim against Skytta for interfering with medical treatment in retaliation for Tucker's grievance filings.  This is Claim 2.

### B.  Claims that Tucker failed to raise in his grievances

A review of the grievances filed by Tucker demonstrates that he failed to exhaust all of his claims against Wickstrom.  Tucker failed to name Lt. Wickstrom in any of the relevant grievances.  Thus, Tucker has not exhausted his claims that Wickstrom conducted sham retaliatory misconduct hearings (Claim 6), discriminated against Tucker based on his race (Claim 7), and violated state law and procedure during the December 7, 2017, misconduct hearing (Claim 8).[8]

Similarly, Tucker failed to raise his conspiracy claim against Defendant Larson in a grievance.  This is Claim 3.

---

racial discrimination claims arose out of this investigation.    (ECF No. 23-8, PageID.506.)  As previously indicated, it was noted in the Step I response that Tucker was appealing the misconduct finding and wanted LaPlante's investigation included in the appeal.

> Hearings packets are not required to be provided for class II misconducts. In accordance with PD 03.02.130 issues that are directly related to the hearing process are non-grievable. As such this grievance is being rejected at this step.
> It is also noted that you are currentl in the process of appealing the misconduct in question.

(*Id*.)  The issue that Tucker raised in that grievance was considered not grievable by the MDOC, so it appears that Tucker had no procedure available to exhaust his claim. Nevertheless, Defendants concede that Tucker exhausted his retaliation and racial discrimination claims arising on December 7-8, 2017, against Defendant LaPlante.

[8]    Defendant Wickstrom was the hearing officer and held a hearing on December 7, 2017, on a misconduct ticket issued by LaPlante on November 7, 2017.  (ECF No. 63-4, PageID.1113-1114.)  Those documents do not show that Tucker exhausted any claims against Defendant Wickstrom.

### C.  Retaliatory false misconduct ticket claims

#### 1.  November 1, 2017 misconduct ticket

Defendants argue that Plaintiff failed to exhaust his retaliatory false misconduct claims for the misconduct ticket dated November 1, 2017, by raising the issue of retaliation during the misconduct hearing.  Tucker argues that he raised the retaliation issue during his misconduct hearing and asserted retaliation when he moved for a rehearing of the misconduct findings.

The Misconduct Hearing Report for the threatening behavior misconduct ticket issued by Defendant Skytta on November 1, 2017 states the basis for the finding of guilt and outlines Tucker's defense.  The relevant part of the report is shown below.

MICHIGAN DEPARTMENT OF CORRECTIONS                                                                          CSJ-240B
                                                                                                            Rev. 10/10

**CLASS I MISCONDUCT HEARING REPORT**

| Prisoner | Prisoner Name | | Facility Code | Lock | Violation Date |
|---|---|---|---|---|---|
| 132271 | Tucker | | AMF | 1 140 | 11/01/2017 |

| Charge(s) |
|---|
| **Threatening Behavior** |

| If Charge Changed by Hearing Officer | Plea |
|---|---|
| | ☐ Guilty    ☒ Not Guilty |

| Misconduct Report Read to and Discussed with Prisoner | ☒ (check if applies) | No Hearing Investigation Requested |
|---|---|---|
| Hearing Investigation Read to and Discussed with Prisoner | ☒ (check if applies) | ☐ (check if applies) |

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Oral by prisoner at hearing: not guilty.  That is a lie.  In fact his statement and Larson's contradicts.  I had no reason to say that.  I had no problem with Larson before this.  This was interfering with my medical treatment.  I knew I was getting out of segregation in 6 days. I had no reason to lie.

The investigation was read to and reviewed with the prisoner; it included:  14 pg. record.  Officer Larson was a witness; H.I. statement - I concur video is not necessary nor the questions to the reporter.  None of the questions to the staff members are necessary.  This hearing officer does not disqualify himself; there is no bias against the prisoner.  The hearing is conducted as required by Statute, rules and policies.  3 prisoner witnesses.

The prisoner again denied the charge.

The prisoner was then told findings and issued a sanction. The report was then typed outside the prisoner's presence.  The hearing was conducted via Tele-video conferencing with the hearing officer in Marquette.

**REASONS FOR FINDINGS**

Threatening Behavior (012) 03.03.105A  Words, actions or other behavior which expresses an intent to injure or physically abuse another person.  I find the prisoner is guilty of threatening behavior.  It is not likely or logical that the officer simply made this up and that the other officer - Larson - with whom he had no problems would agree to fabricate the charge against the prisoner.  The prisoner told the officer that if he opened the door he would "beat his ass."  This expressed an intent to attack, injure and abuse the officer.

(ECF No. 63-3, PageID.1099.)

The Misconduct Hearing Report shown above, which is dated November 13, 2017, indicates that Tucker denied the charge and never asserted that the misconduct was issued in retaliation for protected conduct.[9]   Tucker subsequently mentioned retaliation among other reasons in his request for a rehearing (*see* ECF No. 63-3, PageID.1101-1103), Tucker needed to assert retaliation during his misconduct hearing to exhaust his retaliation claim at the administrative level. *Siggers*, 652 F.3d at 693-94.  In the opinion of the undersigned, Tucker's failure to raise the issue during his misconduct hearing constitutes a failure to exhaust his retaliatory misconduct ticket claim.

## 2.  November 7, 2017, misconduct ticket

Defendants argue that Plaintiff failed to exhaust his retaliatory false misconduct claim for the misconduct ticket dated November 7, 2017.  They argue that Tucker failed to raise his retaliation claim during the misconduct hearing.  Tucker argues that he raised the issue during his misconduct hearing and when he appealed the misconduct findings.

The Misconduct Hearing Report for the November 7, 2017, interference-with-administration-of-rules ticket issued by Defendant LaPlante, fails to show that Tucker claimed retaliation during the hearing.  The relevant part of the report is shown below.

---

[9]    Although, Tucker claims he raised the retaliation issue before the hearing (ECF No. 63-3, PageID.1104), the record does not show that he raised the issue during the hearing.

MICHIGAN DEPARTMENT OF CORRECTIONS                                                        CSJ-229
**CLASS II AND III MISCONDUCT HEARING REPORT**                                              10/10

### GENERAL INFORMATION

| Prisoner Number | Prisoner Name | Facility Code | Violation Date |
|---|---|---|---|
| 132271 | **Tucker** | **AMF** | **11/07/2017** |

### MISCONDUCT VIOLATION

| Hearing | Misconduct Charges |
|---|---|
| Class II ☒ | **Interference with the Adminstration of Rules** |
| Class III ☐ | |

| Misconduct Charge if Changed by Hearing Officer | Plea |
|---|---|
| | ☐ Guilty  ☒ Not Guilty |

### WAIVER OF HEARING

| I understand I have a right to a hearing.  I waive my right to a hearing and plead guilty to all charges.  I also waive my right to appeal and accept the sanctions imposed. | Prisoner's Signature | Date |
|---|---|---|

### HEARING REPORT (Do Not Complete If Hearing Waived)

**Evidence and/or prisoner statement in addition to misconduct report:** Prisoner indicated that a thurough investigation into his complaint was not conducted.  Prisoner claims that the prisoners that witnessed the alleged assault were never interviewed during the investigation.  Prisoner provided a written statement during the hearing.

Entered

DEC  8 2017

AMF Records

#286
ßL

**Reasons for findings:** Hearings determines the misconduct to be credible.  Prisoner Tucker filed a grievance alleging staff misconduct which was investigated and determined to be false.  The investigation involved more than a staff member refuting the claim.  Inspector Minerick reviewed institutional video and found no evidence to substantiate the claims made by Tucker.  Charge Sustained.

(ECF No. 63-4, PageID.1114.)

As before, this Report outlines Tucker's defense and the basis for the finding of guilty.  The Report makes no mention of a retaliation claim.  In the opinion of the undersigned, Tucker's failure to raise the issue of retaliation during the misconduct hearing constitutes a failure to exhaust his claim retaliation by LaPlante on November 7, 2017.

## VII.  Recommendation

The undersigned respectfully recommends that the Court grant Defendant's motion and dismiss claims 1, 3, 6, 7 and 8.  If the Court adopts this recommendation, Lt. Wickstrom will be dismissed from the case and Claims 2, 4 and 5 will go forward.

Dated:   November 19, 2020

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

16

## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).