UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

L. T. TUCKER #132271,                                    Case No.    2:19-cv-00235

        Plaintiff,                                  Hon.   Hala Y. Jarbou
                                                         U.S. District Judge

    v.

M. SKYTTA, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Plaintiff's motion for summary judgment (ECF No. 137) and Defendants' motion for summary judgment (ECF No. 142).

State prisoner L.T. Tucker filed this verified civil rights complaint pursuant to 42 U.S.C. § 1983.   Tucker alleges that his rights were violated during his confinement in the Baraga Max Correctional Facility (AMF).   Tucker says that the Defendants retaliated against him by issuing false misconduct tickets, interfered with his medical treatment, and discriminated against him based on his race.   The remaining Defendants in this case are Corrections Officer (CO) Skytta, CO Larson, and Grievance Coordinator (GC) LaPlante.

It is respectfully recommended that the Court deny Tucker's motion for summary judgment and deny Defendants' motion for summary judgment because genuine issues of material fact exist on each of Tucker's remaining claims.

## II.  Factual Allegations

Tucker's complaint is not a model of clarity.   In very general terms, he appears to assert that Defendants retaliated against him, in violation of the First Amendment; used excessive force against him and were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment; discriminated against him based on race, in violation of the Equal Protection clause of the Fourteenth Amendment; and conspired to commit these violations.

Tucker alleges that he is a 67-year-old African American male who has been diagnosed with type II diabetes, hypertension, and glaucoma.   (ECF No. 138. PageID.1703.)   Tucker says that he was required to be monitored with a diabetic glucose blood test each day before he eats his meals.   (ECF No. 1, PageID.4.) During the morning hours of November 1, 2017, Tucker says that he informed CO Skytta that he first needed to have his blood checked before he could eat.   (*Id.*) Tucker says that CO Skytta, while passing out meal trays to prisoners, responded to him by stating "I don't care if you eat or not."   (*Id.*)   Tucker requested that CO Skytta deliver his hot meal tray after he received his blood test, but CO Skytta allegedly just walked past Tucker's cell.   (*Id.*)   Tucker continued to request a food tray but CO Skytta "was hinting that Plaintiff would not eat" and "further hinted to take adverse action."   (*Id.*, PageID.5.)   Tucker threatened to write a grievance. (*Id.*, PageID.6.)   About ten or fifteen minutes later, CO Skytta allegedly told Tucker that he would write Tucker a misconduct ticket before Tucker could file a grievance. (*Id.*)

Tucker asserts that a misconduct ticket was issued in retaliation for his threat to file a grievance and due to his race, and that CO Skytta interfered with doctor's orders in violation of the Eighth Amendment.    Tucker states that CO Skytta and CO Larson "got together" to "conspire" and come to an "agreement" to make a false statement in support of the misconduct ticket.   (*Id.*, PageID.7.)   Tucker alleges that prison staff, like CO Larson, routinely write false statements to cover up for their co-workers. (*Id.*, PageID.8.)

Tucker alleges that he filed a Prison Rape Elimination Act (PREA) grievance after CO Larson made a sexually harassing remark on November 6, 2017.   (*Id.*, PageID.9.)   CO Larson allegedly retaliated with excessive force by tightening Tucker's handcuffs.   (*Id.*, PageID.9-10.)   In addition, Tucker asserts that CO Larson acted with intent and in gross negligence.

Tucker alleges that CO LaPlante wrote false misconduct reports between July of 2017 and December 20, 2017, due to Tucker's race and grievance submissions.   (*Id.*, PageID.11.)   Specifically, Tucker alleges that CO LaPlante wrote a false retaliatory misconduct ticket due to Tucker's race on November 29, 2017, because Tucker had filed grievance AMF 17-11-2651-26A.   (*Id.*)

The remaining claims are summarized below:

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|--------|-------|-----------|-----------------------------------|
| 1 | Retaliatory false, race-based misconduct ticket, issued in violation of the First Amendment and | Skytta | November 1, 2017 |

| Number | Claim | Defendant | Date or Date Range of Incident(s) |
|--------|-------|-----------|-----------------------------------|
|  | possibly the Fourteenth Amendment |  |  |
| 2 | Interference with medical treatment, in violation of the Eighth Amendment | Skytta | November 1, 2017 |
| 3 | Conspiracy in support of the retaliatory misconduct ticket | Larson and Skytta | November 1, 2017 |
| 4 | Eighth Amendment Excessive force and gross negligence by tightening handcuffs | Larson | November 6, 2017 |
| 5 | False misconduct tickets issued against Plaintiff in retaliation and due to Plaintiff's race, in violation of the First and Fourteenth Amendments | LaPlante | July to December, 2017, and specifically on November 29, 2017 |

### III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party

4

opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV.  Analysis

### 1.  November 1, 2017, retaliatory and race-based misconduct report (Claims 1 and 3)

Tucker says that the misconduct ticket that he received from CO Skytta on November 1, 2017, was retaliatory and issued due to his race.   CO Skytta says that he issued the misconduct ticket because Tucker threatened him.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.   *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.   *Id.*

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Sixth Circuit has also employed a burden-shifting approach with respect to the causation element:

Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

CO Skytta attests that on November 1, 2017, he was conducting morning medical call-outs – i.e., escorting prisoners to healthcare – with CO Larson.  (ECF No. 145, PageID.2027.)   This was his first interaction with Tucker.   (*Id.*, PageID.2029.)   CO Skytta says that he had never spoken with Tucker prior to the morning of November 1, 2017, and was unaware of any grievances that Tucker had previously written.  (*Id.*)  The officers went to Tucker's cell at approximately 7:15 A.M. to take him to healthcare so that he could receive his daily insulin shot.  (*Id.*, PageID.2027.)  Tucker is a level V prisoner and must be restrained before his escort to healthcare.  (*Id.*)  CO Skytta ordered Tucker to come to his cell door to be restrained.  (*Id.*)  Tucker responded by stating, "open that door and I'll beat your ass!"  (*Id.*)  COs Skytta and Larson notified healthcare that Tucker threatened CO Skytta.  Then, due to Tucker's behavior, healthcare staff cancelled the medical call-out.  (*Id.*)  CO Skytta issued Tucker a class I misconduct ticket for threatening behavior.  (*Id.*)

CO Larson confirms that, on November 1, 2017, he was working with CO Skytta while escorting prisoners to their morning medical call-outs.  (ECF No. 143-3, PageID.1963.)  CO Larson says that they arrived at Tucker's cell at about 7:15 A.M. for his medical call-out.  (*Id.*, PageID.1964.)  CO Larson states that when CO

6

Skytta ordered Tucker to come to his cell door to be restrained, Tucker replied, "open that door and I'll beat your ass!"    (*Id.*)    CO Larson and CO Skytta notified healthcare that Tucker threatened CO Skytta and healthcare staff then cancelled Tucker's medical call-out.    (*Id.*)    CO Larson then wrote a witness statement in support of the misconduct ticket written by CO Skytta.    (*Id.*)

Tucker's medical record confirms that his November 1, 2017, morning medical call-out was cancelled.    (ECF No. 143-6, PageID.1998.)    Tucker's medical record states:

---

PATIENT:                 L TUCKER
DATE OF BIRTH:           ████/1954
DATE:                    11/01/2017 10:05 AM
INMATE ID:               132271

---

### Clinical Progress Note

**Comments:**
Inmate refused to cooperate with custody to come out for accucheck and insulin.

**Date:** 11/01/2017
**Time:** 10:05 AM
**User:** Elizabeth M. Corrigan, RN

(*Id.*)

Tucker was found guilty of the threatening-behavior misconduct ticket.    The hearing report is shown below.

---

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Oral by prisoner at hearing: not guilty.  That is a lie.  In fact his statement and Larson's contradicts.  I had no reason to say that.  I had no problem with Larson before this.  This was interfering with my medical treatment.  I knew I was getting out of segregation in 6 days. I had no reason to lie.

The investigation was read to and reviewed with the prisoner; it included:  14 pg. record.  Officer Larson was a witness; H.I. statement - I concur video is not necessary nor the questions to the reporter.  None of the questions to the staff members are necessary.  This hearing officer does not disqualify himself; there is no bias against the prisoner.  The hearing is conducted as required by Statute, rules and policies.  3 prisoner witnesses.

The prisoner again denied the charge.

The prisoner was then told findings and issued a sanction.  The report was then typed outside the prisoner's presence.  The hearing was conducted via Tele-video conferencing with the hearing officer in Marquette.

---

**REASONS FOR FINDINGS**

Threatening Behavior (012) 03.03.105A  Words, actions or other behavior which expresses an intent to injure or physically abuse another person.  I find the prisoner is guilty of threatening behavior.  It is not likely or logical that the officer simply made this up and that the other officer - Larson - with whom he had no problems would agree to fabricate the charge against the prisoner.  The prisoner told the officer that if he opened the door he would "beat his ass."  This expressed an intent to attack, injure and abuse the officer.

---

(ECF No. 138-26, PageID.1811.)    Tucker's request for rehearing, which raised numerous issues, was disapproved.    (ECF No. 138-41, 1827-1830.)

CO Skytta states that Tucker cannot establish the causation element of his retaliation claim.    CO Skytta argues that even if he knew about Tucker's prior grievance submissions, he would still have issued the misconduct ticket based upon Tucker's threatening statement.    Tucker argues that the misconduct ticket was false, that he never made a threatening statement, and that CO Skytta issued the misconduct ticket because Tucker had threatened to file a grievance.    Tucker further states that CO Larson lied in his supporting witness statement.

In the opinion of the undersigned, a genuine issue of material fact exists on the issue of whether the November 1, 2017, threatening-conduct misconduct ticket was based upon a threatening statement made by Tucker, or was a false retaliatory misconduct ticket in response to Tucker's threat to file a grievance.[1]    Similarly, it is

---

[1]    It is unclear whether Tucker is raising an equal protection violation against Defendant Skytta for the issuance of the misconduct ticket.  In the opinion of the undersigned, Tucker has not alleged or supported sufficient factual allegations to support an equal protection claim.    In order to demonstrate an equal protection

recommended that the Court find that an issue of fact exists regarding whether CO Larson's witness statement was part of a conspiracy to retaliate against Tucker.

### 2. November 1, 2017, deliberate indifference (Claim 2)

Tucker states that, on November 1, 2017, CO Skytta was passing out meal trays. (ECF No. 1, PageID.4.) Tucker argues that CO Skytta refused to take him to healthcare before passing out breakfast meal trays. (*Id.*) Tucker explains that because he has diabetes, he needs daily blood glucose level readings before eating his meals. (*Id.*) Tucker says that when he told CO Skytta that he needed to go to healthcare before receiving his meal, CO Skytta responded that he did not care if Tucker ate and started to walk away. (*Id.*)

CO Skytta presents a different version of the events. CO Skytta asserts that he was assigned, along with CO Larson, to escort Tucker to healthcare for his medical call-out. (ECF No. 145, PageID.2027.) Skytta says that once Tucker threatened him with personal harm, the medical call-out was canceled. (*Id.*, PageID.2028.) CO Skytta argues that Tucker cannot establish the objective or subjective components of this Eighth Amendment deliberate indifference claim.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to

---

violation, Tucker must show "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.   *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.   *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.   *Id.*   In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.   *Id.*   "[A]n inmate who complains that ***delay in medical treatment*** rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed."   *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (emphasis added, citations omitted).   The Court of Appeals elaborated on the holding in *Napier* in its 2004 ruling in *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890 (6th Cir. 2004), where the Court stated the following:

> *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's ***failure to treat a condition adequately***, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Blackmore*, 390 F.3d at 898 (emphasis added).    Thus, *Napier* and *Blackmore* provide a framework for assessing a claim of delayed or inadequate care for a non-obvious condition:    A plaintiff making this type of claim must place verifying medical evidence in the record to show the detrimental effect of the delayed or inadequate treatment.

However, the objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).    Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."    *Id.*    Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."    *Id.* at 837.    The subjective component was recently summarized in *Rhinehart v. Scutt*, 894 F.3d 721 (6th Cir. 2018).    The court of appeals stated the following:

> A doctor's errors in medical judgment or other negligent behavior do not
> suffice to establish deliberate indifference. Instead, the plaintiff must
> show that each defendant acted with a mental state "equivalent to
> criminal recklessness." This showing requires proof that each defendant
> "subjectively perceived facts from which to infer substantial risk to the
> prisoner, that he did in fact draw the inference, and that he then

disregarded that risk" by failing to take reasonable measures to abate it.

A plaintiff may rely on circumstantial evidence to prove subjective recklessness: A jury is entitled to "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." And if a risk is well-documented and circumstances suggest that the official has been exposed to information so that he must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

But the plaintiff also must present enough evidence from which a jury could conclude that each defendant "so recklessly ignored the risk that he was deliberately indifferent to it." A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. A doctor, after all, is bound by the Hippocratic Oath, not applicable to the jailor, and the physician's job is to treat illness, not punish the prisoner. Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "*consciously* expos[ed] the patient to an *excessive* risk of *serious* harm."

*Id.* at 738–39 (6th Cir. 2018) (internal citations omitted).

CO Skytta asserts that he went to Tucker's cell to take him to a medical call-out, but he had no knowledge of Tucker's medical condition. Nevertheless, for purposes of this motion, the Court must accept the facts as alleged by Tucker. Tucker alleges that CO Skytta was passing out meal trays and refused to take him to his medical call-out. Tucker says he informed CO Skytta that he needed to first have his blood checked before he could receive his meal tray. Tucker asserts that

CO Skytta simply responded that he did not care if Tucker ate his meal and he refused to take him to healthcare.

Tucker alleges that CO Skytta was aware that he was diabetic and needed daily insulin shots.  This is not disputed. (ECF No. 145, PageID.2028.)  Tucker alleges that he told CO Skytta that he needed his blood test before he could eat his meal, so accepting this allegation as true, CO Skytta was aware that Tucker's failure to get blood checked led to him missing a meal.  Tucker's allegations are sufficient to show that he had an objective serious medical need to get his blood tested before he received his daily meals.

As to the subjective component of his Eighth Amendment claim, Tucker has established that CO Skytta had knowledge of his medical condition based upon the allegation that Tucker told Skytta that he needed to go to health care for a blood test, and CO Skytta's affidavit admitting that he was aware that Tucker was a diabetic and that he received daily insulin shots.   In the opinion of the undersigned, these allegations are sufficient to raise an issue of fact as to whether CO Skytta acted with deliberate indifference by refusing to take Tucker to health care for his blood test and by denying him his meal.

### 3.  November 6, 2017, excessive force (Claim 4)

Tucker alleges that CO Larson used excessive force when he tightened Tucker's handcuffs on November 6, 2017. (ECF No. 1, PageID.9-10.)   CO Larson denies using excessive force.   The MDOC investigated the incident and found that Tucker made a false claim of excessive force.   As a result, Tucker received a

misconduct ticket for interference with the administration of rules.   Tucker was found guilty of the misconduct for making a false claim and never appealed that finding.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.   Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."   *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).   The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."   *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).   The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."   *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).   Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."   *Ivey*, 832 F.2d at 954.   "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"   *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).   As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*   Further, in determining whether force was applied in a malicious or sadistic manner, the Court should consider factors such as (1) the need for application of the force, (2) the amount of force used, (3) the extent of injury inflicted, (4) the threat to the safety of staff and inmates reasonably perceived

14

by the prison official, and (5) any efforts made to temper the severity of the forceful response. *Whitley v. Albers,* 475 U.S. 312, 321 (1986).

The Court notes that the "absence of serious injury" is relevant to the Eighth Amendment inquiry.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (*citing Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." [*Hudson*, at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)].  The extent of injury may also provide some indication of the amount of force applied.  As we stated in *Hudson,* not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9.  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.*, at 9–10 (some internal quotation marks omitted).  An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.*, at 9 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

*Wilkins*, 559 U.S. at 37–38.  The Court added that "an inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  *Id.* at 38.

In *Wilkins*, the plaintiff alleged that he was "punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation.'"  *Id.* at 38.  The assault allegedly left the plaintiff with a bruised heel, back pain, hypertension, migraine headaches, dizziness, depression, panic attacks, and nightmares.  *Id.* at 35.  The Court held that given the allegations regarding the nature of the assault, the district court erred in dismissing the plaintiff's complaint on the basis that his injuries were "de minimis."  However, the Court remanded the

15

case for further proceedings regarding whether the defendant's use of force was malicious and sadistic.  *Id.* at 39.

Tucker was first examined cell side after he alleged that he was assaulted and had suffered a serious injury.    The record states:

**Action & Resolution**

| Date | Time | User | Detail |
|------|------|------|--------|
| 11/07/2017 | 1:40 AM | Dawn M. Coon, RN | Schedule Nurse Sick Call approx 11/07/2017 with RN by Dawn M. Coon, RN. Reason: "I was assaulted and suffer serious injury to my hand I am in real pain wanted to see doctor. My hand hurt ect. swoend.". Details: Spoke with inmate cell side who states hand was pinched in cuff. Pea-sized swelling present. Inmate ok with being placed on tomorrow's call-out.. Comments: Nurse sick call, Lock 1-140. |

**Other**
Reason: "I was assaulted and suffer serious injury to my hand I am in real pain wanted to see doctor. My hand hurt ect. swoend.".

Details: Spoke with inmate cell side who states hand was pinched in cuff. Pea-sized swelling present. Inmate ok with being placed on tomorrow's call-out..

(ECF No. 143-6, PageID.1997.)    The next day, Tucker was examined.    Tucker stated:

Recent injury? Yes. Comments:  States it happened on 11/6/2017

Pain? Yes. Comments:  Inmate rates pain at a 8 out of 10.

" My thumb got pinched when they put the cuffs on me, i know it aint broke but its real sore."

(*Id.*, PageID.1995.)    Upon assessment, the nurse determined that Tucker had a slight indentation and could move his left thumb without difficulty:

Left thumb with a slight indentation assessed, able to move without difficulty.

**Assessment:**
Alteration in comfort
Related to: bruise/contusion,

(*Id.*, PageID.1996.)

Tucker alleges that the force used by CO Larson when he tightened the handcuffs was unnecessary and solely because CO Larson intended to cause him

16

injury.  (ECF No. 1, PageID.10, ECF No. 138, PageID.1718.)   Tucker asserts that CO Larson acted with a culpable state of mind to cause him harm.  (*Id.*)   Although, Defendant describes the injury as minor, Tucker alleged that he was in unnecessary pain and CO Larson acted intentionally and without reason in applying the handcuffs.   Tucker's allegations raise a genuine issue of fact regarding the extent of his injury and whether CO Larson acted maliciously and sadistically to cause Tucker an injury.   Whether, CO Larson needed to use force, the amount of force used, the threat to the safety of staff and inmates perceived by CO Larson, and efforts to temper the severity of a forceful response are matters that are better resolved by a jury under the circumstances presented in this case.

### 4. July to December 2017 – retaliatory and race-based misconduct reports (Claim 5)

Tucker alleges that GC LaPlante issued false misconduct tickets based on Tucker's race, and also in retaliation for the 30 to 40 grievances that Tucker filed from July to December 2017.   Specifically, Tucker asserts that the November 29, 2017, misconduct ticket that he received for interference with the administration of rules was part of a series of "arbitrary and capricious" conduct by Defendant LaPlante in 2017.   (ECF No. 1, PageID.11.)

On November 29, 2017, GC LaPlante issued an interference-with administration-of-rules misconduct ticket against Tucker based upon Tucker's claim that CO Larson had used excessive force against him by applying handcuffs too tightly.   GC LaPlante attests that, under Policy Directive 03.02.130(M), a class II misconduct may be issued upon approval of the warden to a prisoner for interference

17

with administration of rules if the prisoner filed an intentionally false grievance that, if factually true, would have resulted in employee discipline or corrective action. (ECF No. 143-7, PageID.2000.)   After Tucker filed a grievance against CO Larson alleging that CO Larson committed an assault and battery against him by over-tightening his handcuffs, Defendant LaPlante requested an investigation of the incident.   (*Id.*)   The matter was investigated by Resident Unit Manager Jondreau, who reviewed the video.[2]   Tucker's allegations against CO Larson were also submitted to the AMF Inspector.   Tucker's allegations were determined to be without merit.   As a result, Defendant LaPlante issued the misconduct ticket.[3]

Tucker's excessive force claim against CO Larson was set forth in a grievance. That grievance was denied at each step of the grievance process.   (ECF No. 138-12, PageID.1768-1771.)   The prison's Step I response is shown below.



RESPONSE (Grievant Interviewed?    ☑ Yes    ☐ No    If No, give explanation.  If resolved, explain resolution.)

The grievant was interviewed and added nothing.  C/O Larson was interviewed and denied the allegations.  Larson stated that at no time did he assault the grievant as alleged.  Inspector Minerick was also interviewed regarding this grievance.  Minerick reviewed the unit video surveillance regarding the allegations.  Minerick determined there was no evidence to substantiate the allegations of the grievant.  The video showed no assault to the grievant as alleged.  The video showed the routine application of restraints and staff escort.  Upon review there is no evidence to substantiate the allegations.  No violations of PD 03.03.130 are noted.

(ECF No. 138-12, PageID.1768.)

Tucker's use of the grievance system to make an excessive force claim against CO Larson triggered GC LaPlante's misconduct ticket against Tucker.   A copy of a portion of GC LaPlante's misconduct ticket is below.

---

[2]    The video is not in the record.

[3]    LaPlante attests that he was the grievance coordinator for approximately 7 years and processed between 3000-5000 grievances per year.   He issued only about 10 misconduct tickets for interference with administration of rules during the time that he was the grievance coordinator.

18

> Misconduct Class: ☐ I  ☒ II  ☐ III        Charge(s):  Interference with the Administration of Rules
>
> Describe Violation  (If contraband involved, describe in detail; identify any other employee witnesses):
> On 11/7/17 I received in my office a grievance from 132271 Tucker, in it he alleged that C/O Larson used a handcuff "to cause serious assault and battery". These allegations were investigated by RUM Jondreau and found to be without merit. The investigation included a review of the facilities video recording system.  The allegations were also referred to the Inspectors office.  It is felt that Tucker wrote the grievance to cause disciplinary action to be taken against this staff member, and if it were found to be true would have caused said disciplinary action up to and including dismissal.  Tucker was identified by the OMNI tracking system and previous contact. The delay in the writing of this misconduct was due for the need of administration approval.

(ECF No. 138-42, PageID.1831.)

The MDOC conducted a hearing on this misconduct ticket and found Tucker guilty.   A portion of the hearing report is shown below.

> **Reasons for findings:**  Hearings determines the misconduct to be credible.  Prisoner Tucker filed a grievance alleging staff misconduct which was investigated and determined to be false.  The investigation involved more than a staff member refuting the claim.  Inspector Minerick reviewed institutional video and found no evidence to substantiate the claims made by Tucker.  Charge Sustained.

(ECF No. 138-43, PageID.1832.)   Tucker's request for a rehearing was denied. (ECF No. 138-44, PageID.1833.)

In the opinion of the undersigned, Tucker has presented allegations that could establish retaliatory conduct or that he was given the interference-with-administration misconduct ticket due to his race.   Tucker alleges that he was issued the interference with administration misconduct ticket because of his past grievance filings and as part of a series of arbitrary actions by GC LaPlante.   LaPlante's assertion that he would have issued Tucker the misconduct ticket regardless of Tucker's past grievance filings simply raises an issue of material fact that should not be resolved at the summary judgment stage.

## 5. Qualified Immunity

Alternatively, Defendants move for qualified immunity from liability because they did not violate any clearly established rights.   "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   The analysis entails a two-step inquiry.   *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).   First, the court must "determine if the facts alleged make out a violation of a constitutional right."   *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).   Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."   *Id.* (citing *Pearson*, 555 U.S. at 232).   A court may address these steps in any order.   *Id.* (citing *Pearson*, 555 U.S. at 236).   A government official is entitled to qualified immunity if either step of the analysis is not satisfied.   *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.   *Graham v. Connor*, 490 U.S. 386, 394 (1989).   The court considers the state of the law at the second step.   As the Supreme Court has

observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct.  305, 308 (2015)).   As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly

> established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

In the opinion of the undersigned, where there are two plausible views of the facts and a genuine issue of material fact exists on the record, the Court is prohibited from entering summary judgment for either party.

## VII.    Recommendation

It is respectfully recommended that the Court deny Tucker's motion for summary judgment (ECF No. 137) and Defendants Skytta, Larson, and LaPlante's motion for summary judgment (ECF No. 142).

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    February 1, 2022              /s/ *Maarten Vermaat*
                                        MAARTEN VERMAAT
                                        U.S. MAGISTRATE JUDGE